## GEORGE D. SMALL *v.* ELIAS E. BOUDINOT.

## ELIAS E. BOUDINOT *v.* GEORGE D. SMALL.

1. A party who seeks redress on the ground of fraud, must point out and specify the fraud. A general charge of fraud is not sufficient.

2. That the complainant has understood that a sale was conducted fraudulently; that the defendants and others specified were the wrong-doers, and that they suppressed certain facts which ought to have been made known, is not a sufficient statement of the facts which constitute the alleged fraud. It should appear in what respect the sale was fraudulently conducted, or what facts were suppressed to the detriment of the complainant.

3. S. being the owner of a valuable tract of land, entered into an agreement with a number of individuals to sell them the land. By the agreement, the purchase was made up into shares of one thousand dollars each —B. was the owner of one share, and S. of five. The terms were that a certain per cent. was to be paid down; the property was then to be sold under the management and control of the majority of the shareholders, and S. was to be paid the balance of his purchase money out of the proceeds of the sale. It was sold in building lots, and B. became the purchaser of a lot for five thousand dollars; he paid one thousand five hundred dollars of the purchase money, and, for the balance, gave a bond and mortgage. On a bill filed by B., alleging that the sale was fraudulent, because there were under-bidders for the said property, in opposition to the complainant, B., and in behalf of S., to inflate the price of the property, it was held that, as the complainant was one of the owners of the property, making the sale as well as the defendant, that there could have been no under-bidding without the authority of the complainant himself. That the complainant should at least have alleged and proved that it was a secret contrivance, without his knowledge or consent.

---

The original bill in this cause was a bill for sale of mortgaged premises, filed by Small against Boudinot. The cross-bill was filed to compel Small to take a re-conveyance of the property, cancel the mortgage, and the bond it was given to secure, and account for the principal and interest money paid on the bond and mortgage. The case is fully stated in the opinion of the Chancellor.

*Grover*, for complainant, Small.

*Wm. Pennington*, for defendant, Boudinot.

*Gifford,* for complainant in cross-bill.

*Wm. Pennington,* for defendant, Elias E. Boudinot. The defence raised by the answer of Mr. Boudinot, and insisted upon in the cross-bill, is that the sale of the property for which he gave the mortgage sought to be foreclosed in this suit, was fraudulent and void.

1st. Because there was under-bidding at the sale among the parties interested, by which the price was inflated. Thus, while Mr. Boudinot was acting under the impression of a fair and open sale, the company, and Mr. Small among them, were secretly plotting against him—placing it beyond the power of any purchaser to obtain the property for less than a fixed and exorbitant price.

I refer to the answer of George D. Small, the present complainant, for the facts in the suit in chancery, against John J. Plume, which accompany the papers, and which it is agreed, with the depositions in that case, shall be read in this cause. Indeed, the answer of Mr. Small might legally be read, I suppose, as an admission on his part, in writing, of the transaction. The whole answer, though put in the most favorable aspect for his side, still discloses the important fact of under-bidding and want of fairness in the public sale.

A sale made under these circumstances is fraudulent. *Howard* v. *Castle,* 6 *Tenn. Rep.* 642 ; *Baxwell* v. *Christie,* *Cowper* 395 ; *Bramley* v. *Alt,* 6 *Vesey, Jr.,* 622, *and in note;* 1 *Story's Commentaries on Eq.,* where all the cases are cited in the note page 297, § 293.

2d. The price bid for the property under this state of things was exorbitant, being more than three times its value. 4 *Dess.* 697.

3d. By the articles of vendue, the buildings were to be removed. The terms are positive.

The buildings on this property were an eye-sore, and subscribers to the property were no doubt obtained for the very purpose of getting them removed. I notice a subscription

for the purchase of the property, in the name of Stephen Van Cortlandt, for two thousand dollars. This was, no doubt, to aid in getting clear of the buildings. This gentleman lived in a retired way, with a fortune, and it was an object to get a building out of the way, used for all kinds of public shows and military companies, for it was, and well called Cadet's Hall.

But it is said this clause in the articles did not extend to a purchaser of the lot on which the buildings were situated. He might let them remain, if he pleased. This was not the spirit or object of the condition, as we presume. The other lots were not as valuable with adjoining ones, covered with old buildings, as if new ones were to be erected. Indeed, it is doubtful whether the sales could have been made at all, if these buildings had remained. It makes a wide difference with purchasers.

The fact of the building remaining to-day, is admitted in Small's answer. He places himself on his right to retain the building.

Mr. Small is the owner of the property; the title came from him. Can he, at any rate, retain the possession of the property, keep his buildings on the lot, and yet demand of Mr. Boudinot, interest on his purchase, from the day of sale? He should, before enforcing payment of his bond and mortgage, we respectfully insist, deliver possession of the lot purchased by Mr. Boudinot, freed of the old building, according to the terms of sale.

But it may be insisted that all this might have constituted a sound objection to Mr. Boudinot's taking his deed, but, having done so, and given his mortgage, the contract is executed, and it is now too late to raise these objections.

I answer, that before a decree for sale can be ordered, a sum of money must be found due the complainant, upon a binding contract, and, if the contract and sale be fraudulent and void, the whole must fall to the ground. Mr. Boudinot will consent that all the papers be canceled, which is all the complainant should, in conscience, ask.

There is a very great difference between this and the case of Small *v.* Plume. That was a purchase made by Plume at the *second* sale, and not at the first, at which the under-bidding took place, admitted by Small, in his answer. The Chancellor expressly grounds his decision on that distinction.

The ground was also taken by Small's counsel, that in Plume's case, under the articles of second sale, the building (in the singular) standing on the lot purchased by him, should be removed, whereas, in the case of Boudinot, at the first sale, it was admitted, and is unqualifiedly so expressed as a substantial part of the contract, that *all* the *buildings* should be removed.

Public morals require this practice of under-bidding frowned upon by the courts, both of law and equity, especially the latter.

The sale was made at the time of the great monomania which pervaded the country, and which contracts have, to a great extent, been held invalid, even without special circumstances of fraud, by parties themselves, and sometimes by the courts, upon slight circumstances.

The case is a very hard one, and I trust the Chancellor will see good ground for annulling the entire contract, and if not, that he will refuse to allow interest until the possession of the lot, cleared of the old buildings, is proved to have been made.

*A. Gifford,* for complainant in cross-bill.


*Under-bidding.*

*Bramley* v. *Alt,* 3 *Vesey* 626, *note.* This note refers to the case of *Walker* v. *Nightingale,* 3 *Bro. P. C.* 263.

Persons bidding for the vendor, attend for no other purpose but to mislead the judgment and raise the price upon the buyer, beyond what any other person who really wants the thing, will give.

A purchaser judges of the value by his own judgment and

the information of others.   If he sees ten persons to be supposed not connected, bidding as if for themselves, the fact conveyed to his mind is, that there are ten persons who think the property of that value.   Great competition is evidence that it may be of much greater value than he thought. Suppose he sees several persons bidding for a house, that will influence his judgment.   An auction is upon a different principle from a private sale.   In the former, the vendor renounces the right of fixing the price, and agrees to sell at such price as a competition shall raise it to.

*Inadequacy of Price.*
1 *Madd.* 424–5.

The effect of inadequacy of price upon contracts is such that where a sale has been made for a very low price, or extremely unreasonable, the court will not enforce a specific performance.

*Seymour* v. *Delaney,* 6 *Johns. Ch. Rep.* 222.

An agreement must be fair and just in all its parts, otherwise a specific performance will not be decreed.   Inadequacy of price, though not so great as to amount to a fraud, may be a sufficient ground for refusing to decree a specific performance of a contract; and though mere inadequacy of price, *without other circumstances,* may not be sufficient to set aside the transaction, yet it may be sufficient to induce the court to withhold its discretionary power to enforce the performance of the contract for the sale of land.

*Rodman* v. *Zilley et al., Saxton's Rep.* 324.

Courts of equity seldom interfere to set aside sales and contracts on the ground of inadequacy of price—they leave the parties to their legal remedies.   *But* when they are called on for extraordinary aid to enforce a contract, they take the liberty to examine into the consideration to be given—its *fairness* and *equality,* and all the circumstances connected with it.   And if anything manifestly inequitable appears in that part of the transaction, they never will lend their power to carry the contract into execution, and refers to the case of *Seymour* v. *Delaney, in* 6 *Johns.* 222, above.

*Cirtheral* v. *Ogilvie*, 1 *Dess.* 258, *and* (*d*) *note*, *and opinion of court* 263.

The court in this case refused to decree the specific performance of a contract for the sale of land, where the inadequacy of price was very great, though no direct fraud or imposition was shown, and the court say that (p. 256,) though inadequacy of price may not alone be sufficient ground to set aside a contract, yet is a material ingredient and will go a great way where the property has been sold · for a sum grossly inadequate to its real value, &c., and in page 263.

The court, on full consideration of the case and all the circumstances attending it, and from the evidence on the part of the defendants (although there was no proof of fraud or imposition on part of the complainant,) are of opinion that the sum for which the land was agreed to be sold, is grossly inadequate to its real value. That being an unreasonable contract, and a very hard bargain, it would be unreasonable and unjustifiable to decree a specific performance of the agreement.

How far equity will go in permitting parol evidence as to intentions of a party, and how far the proceedings at first sale influenced the second sale.

*Woolman* v. *Hearn*, 7 *Vesey* 216, 219.

Here the plaintiff contended she had signed an agreement to pay a rent of seventy-three pounds, but that she signed it under a belief that such was the rent payable by the defendant, the real agreement being for a lease at the same rent he paid his landlord, and offers parol evidence to prove an express agreement; she was to have it on the same terms he had it, and to show that nothing could be meant by that expression but *the same rent.*

The court say that by the rule of law, independent of the statute of frauds, parol evidence cannot be received to contradict a written agreement. But when equity is called on to exercise its peculiar jurisdiction, by decreeing a specific performance, the party to be charged is let in to show *that*

Small v. Boudinot.

*under the circumstances* the plaintiff is not entitled to have the agreement specifically performed, and that there are many cases where parol evidence of such circumstances has been admitted, as in the case of Baxter *v.* Lester, when, upon the face of the judgment, a specific sum was to be given for timber; but it was shown by parol that the defendants *were induced* to give that upon the representation that it was valued by two timber merchants, which was not true.

*Clark* v. *Grant*, 14 *Vesey* 519.

Here specific performance of an agreement in writing, for a lease for sixty years, was refused upon parol evidence of an alteration stipulated for at the time, and upon the faith of which the party assented, the defendant had signed the agreement upon faith of a certain *alteration in the premises being made*, and the court say that it would be against equity, and a fraud on the defendant, to insist upon his performance of an agreement which he only signed on the faith of an alteration being made in one of its terms. It has been ruled that it is not open to a plaintiff to supply or correct a term of a written agreement by parol, but it has never been determined that a defendant cannot set up a parol engagement in opposition to a party who, having entered into it, *seeks to have a written agreement performed independently of it*, and they decree that the bill shall be dismissed, unless the plaintiff shall execute such a lease as the defendant promised he was to have.

In the case of Boudinot, it was not only made a condition of sale, (in the written articles of purchase,) that the buildings should be removed, but it was proved that so it was given out at the time of sale expressly.

*Concealment of intentions to keep the buildings on the premises.*

*Shirley* v. *Stratton*, 1 *Bro. C. C.* 440.

This was a bill for the specific performance of an agreement for the purchase of an estate in marshland at *Banking*, in Essex, and for the payment of a sum of one thousand

pounds, the purchase money. The defence was that the estate was represented to defendant as clearing a net value of ninety pounds per annum, and no notice was taken to him of the necessary repair of a wall to protect the estate from the river Thames, which would be an outlay of fifty pounds per annum ; and it appearing upon evidence there has been an industrious concealment of the circumstance of the wall during the treaty. Bill dismissed, with costs.

*Meade* v. *Webb*, 1 *Bro. P. C.* 308.

In treaties for an agreement, a willful and industrious concealment of a material fact by one of the parties, in order to keep the other in ignorance, is a gross fraud, and will, in equity, set aside the contract.

*As to fraud not charged in the bill, but replied to fully in the answer.*

*Cooper's Equity Pleadings, p.* 314 ; 1 *Vesey, Sr.,* 535.

A defendant is not obliged to answer facts without being stated or charged in the bill, but if defendant does answer to such facts, and plaintiff replies to such answers, they are properly put in issue, though they were not charged in the bill.

*How far a general charge in a bill permits particular evidence as to circumstances.*

*Faulder* v. *Stuart,* 11 *Vesey* 301.

Question whether there is such a charge in the bill, as to the payment of the consideration of an assignment, as entitles plaintiff to an answer as to all the circumstances. I have always understood that a general charge enabled you to put all questions upon it that are material to make out whether it was paid.

*Small* v. *Boudinot.*

The points raised on the argument in this case have greater force when it is considered that the great object of the sale, which appears by the pleadings and evidence in both the cases of Plume and of Boudinot, that the object of the purchasers was not speculation, (as will be seen by the

result of the sale, by scarcely one hundred dollars)—or any immediate profit; but was to deliver the town and neighborhood from acts and scenes of a demoralizing tendency, and to build up with substantial buildings on the site of those which were dilapidated and unsightly. Purchasers were induced to bid, under the positive assurances that the buildings should certainly be removed—a positive condition, which must stand as a subsisting ground of specific performance, as in the case of *Clarke* v. *Grant,* 14 *Vesey* 524. " It would be," says the master of the rolls, " against equity and a fraud on the defendant, to insist upon his performance of an agreement which he only signed on the faith of an alteration being made in one of its terms—but for this promise *there would probably never have been any agreement at all."*

The question is, can Boudinot be made to comply with a contract, the most important terms of which never have been, in the least degree, attempted to be performed by the vendor, and when fraud, deceit and the grossest advantage have been taken?

THE CHANCELLOR. The original bill was filed by Small against Boudinot, on a mortgage given by Boudinot and wife to Small, to secure, in part, the purchase money for the land embraced in the mortgage. Boudinot, by his answer, sets up fraud in the sale, and further, that the conditions of the sale have not been complied with.

The object of the cross-bill is to compel Small to take a re-conveyance of the property, cancel the mortgage and the bond it was given to secure, and account for the principal and interest money paid on the bond and mortgage.

Small was the owner of a valuable tract of land in the city of Newark. In 1836 he entered into a written agreement with a number of individuals to sell them the land. By the agreement the purchase was made up into shares of one thousand dollars each. Boudinot was the owner of one share and Small of five shares. The terms were, that a certain per cent. was to be paid down, the property was then to be sold under the management and control of the

majority of the shareholders, and Small was to be paid the balance of his purchase money out of the proceeds of the sale. It was sold off in building lots at public sale, and Boudinot became the purchaser of a lot at five thousand dollars. He paid one thousand five hundred dollars of the purchase money, and for the balance gave the bond and mortgage in question, upon which several years' interest has been paid.

The bill alleges the sale was fraudulent.

*First.* That " there were under-bidders for the said property, and that such under-bidding upon the same, in opposition to the complainant, was in behalf, or at the instance of the said George D. Small, to inflate the price of the property ; and the price at which the same was struck off was far beyond what the said property would bring, and beyond what any other person would have been willing at that or other time, before or since, to give for the same."

There were twenty-eight owners of the property. The sale was made by them ; and of which number the complainant in the cross-bill was one, as well as the defendant. How, then, there could have been under-bidding at the sale in opposition to the complainant, and on behalf, or at the instance of the defendant, cannot well be conceived. If there were any bids in opposition to the complainant, in behalf of the defendant, they were not under-bids, but *bona fide* bids, by which the defendant was bound. What authority had Small to underbid? He could not do it without the authority of the vendors. It is not alleged that they gave him any authority. If they did, as the complainant was one of the vendors himself, he ought to go further, and, at least, allege and prove that it was a secret contrivance without his knowledge or consent.

*Again.* The complainant alleges that he continued to pay interest on his bond until *he was informed* " that the said sale was the result of contrivance and management between Small and some of the committee, secretly and designedly to deceive and defraud the purchasing (purchasers) at said sale."

But what the contrivance between Small and some of the

committee was, and how the said sale was the result of such contrivance, is not stated, but left to conjecture. The complainant had before alleged that the under-bidding was at the instance and on behalf of Small. This has no connection with the charge of contrivance between Small and the committee.

There is one other allegation of fraud in the bill. I will state it in the language of the bill: "That he has understood, since the payment of the said interest and notes, that the said sale was promoted and set forward, and was carried on, by means of a secret understanding between the said George D. Small and some person or persons on the committee appointed to conduct the sale as aforesaid, and in a fraudulent manner, for the purpose of deceiving your orator, Elias E. Boudinot; and that there were such proceedings had on the part of the said persons composing the said committee, or some of them, upon arrangement made with the said George D. Small, as were suppressive of such facts as ought to have been known to the bidders, and such as were fraudulent, to deceive the said purchasers, and especially your orator; and that there was, in the inception of the said agreement for purchasing as aforesaid, and conduct of the said sale, fraud, misrepresentation and concealment on the part of the said George D. Small, by means of which the said purchase was made by your orator, Elias E. Boudinot, and with a design to sell off the said lots, and particularly the lot sold to your orator, at a price inflated and far beyond its value."

It is apparent that a charge like this is no foundation for relief. A party who seeks redress, on the ground of fraud, must point out and specify the fraud. A general charge of fraud is not sufficient. The party alleging it must state the facts which constitute the fraud. A general charge of fraud in a bill is not sufficient to authorize a decree for the complainant, on demurrer to the bill. *McCaleb* v. *Perry*, 5 *Heyward* 88. How can the defendant meet this charge? How can he answer it? The charge is only this: that the complainant has understood (without even averring his be-

lief of its truth) that the sale was conducted fraudulently; that the committee and Small were the wrong-doers, and that they suppressed certain facts which ought to have been made known. In what respects the sale was fraudulently conducted, or what facts were suppressed, to the detriment of the complainant, we are not told.

The fraud is denied in the answer, without any reserve, and I do not think there is the least evidence to suspect even that any fraud upon the complainant was contemplated or practiced, either by Small, or the committee, or by any one else. All the evidence upon which the complainant's counsel rely is that, at the sale, two lots were purchased in on behalf of the vendors. But how can this affect the purchase of the complainant? Suppose the other lots were fraudulently sold, and that, by the contrivance of the defendant, the price was run up and became exorbitant; unless the complainant can show that the persons who were *his* competitors at the sale for the very lot he purchased, were fictitious bidders, and that he was defrauded, the fact that there were under-bidders for other lots, and fraud in the sale, can avail the complainant nothing. Now, it is not shown that there were any bidders against the complainant. From everything that appears in the case, the complainant obtained the lot at his own price. The complainant does not show himself entitled, either to the morality or the law laid down by Lord Mansfield in *Baxwell* v. *Christie, Cowper* 395. There is no fault in the counsel who drafted this bill—the facts are wanted upon which a bill can stand.

As to the relief asked for, on the ground that the conditions of sale have not been complied with. The third condition was as follows:

3. The buildings will be sold, to be removed within thirty days from this date, from the premises.

The buildings were sold separate from and after the sale of the lots. Small bought a lot upon which was a building, and afterwards purchased the building. He has not removed it, and the complainant insists he has a right to have the contract rescinded, and the parties placed *in statu quo*.

As to all the allegations in the bill, of motives and declaratons of the vendors in prescribing this condition of the sale, they cannot be considered. The condition is reduced to writing, and the motives of the parties, or their subsequent parol declarations, cannot give construction to it. Besides, no attempt was made to prove the allegations, and as far as the character of the charges would admit of a denial by him, they are denied by the answer of the defendant.

This condition of sale was a matter between the vendors and the purchasers of the buildings. It was not a condition upon which the lots were sold. The purchaser of a building took it upon the condition that he would remove it in thirty days. Of what benefit is this condition of sale to a purchaser of a lot without a building? If it is a farm-house; if the condition requires its removal, it does not prevent another of like character being erected on the same lot. If the object to be accomplished, and which was in view of the parties interested, was to rid the lots of a certain description of buildings, this condition did not accomplish it. The purchasers were in no wise restrained as to the character or description of buildings to be erected, nor were they prohibited from retaining buildings already there.

It is not necessary to examine the other demands upon which the relief sought for by the cross-bill is resisted.

The cross-bill must be dismissed, with costs. The complainant in the original bill is entitled to his decree, with a reference to a master to compute the amount due on his mortgage.